JOHN F. BRIGG *et al.*, Respondents, *against* HENRY HILTON *et al.*, Appellants.

(Decided January 3rd, 1882.)

Where, before the delivery by the seller to the purchaser, of goods under an executory contract of sale, without an express warranty, samples, represented by the seller to be actually taken from the articles afterwards delivered, are sent by him to the purchaser with the invoices of the goods, and the latter, relying upon such samples as representing the quality of the goods delivered, is thereby induced to accept defective goods without making a laborious and minute examination which would be necessary to disclose the defects, he may, nevertheless, subsequently, upon discovering the defects, return the goods to the seller and recover back the price.

APPEAL from a judgment of this court entered on a verdict of a jury rendered by direction of the court.

The facts are stated in the opinion.

*Henry H. Anderson*, for appellants.

*Blumenstiel & Hirsch*, for respondents.

J. F. DALY, J.—The questions to be examined in this appeal arise upon the defendants' counter-claim for damages on the sale to them, by plaintiffs, of six bales of cloakings. The goods were ordered in March, 1880, from samples of sound merchantable goods exhibited by plaintiffs, and were to be manufactured in Europe. They were delivered in August and September, 1880, in six bales containing fifty-seven pieces. Prior to the delivery, the plaintiffs sent to the defendants invoices of the goods and six sample books, one representing each bale, and giving a piece of the goods in the bale, and supposed to be cut therefrom. Defendants examined the first bale received (No. 300), and found it substantially like the sample, and perfectly sound. All the samples in the books corresponded with each other in quality, and corresponded with the samples from which the purchase was originally made. The goods were put on sale by defendants, the bale

Brigg *v.* Hilton.

first received (No. 300), being sold first. In November following the delivery defendants discovered that the cloakings in the other bales were, in places, thin, tender and rotten. Out of 47 pieces only three were all right. They were not merchantable; had tender streaks all through, and were thin from being over-worked. Defendants sold about 707 yards out of 2,877 delivered, the balance being worthless.

These defects could only be discovered by unfolding all the goods, and looking over them as they were run off on a reel.

The defendants at the close of the trial asked leave to go to the jury on several questions, among which were the following :—" The defendants were under no obligation to make an examination of the goods," and " if the plaintiffs in advance of the delivery of the goods, sent samples purporting to represent the character of the goods which they were to deliver, the defendants had a right to suppose that the goods afterwards delivered were equal to such samples."

I think these requests should have been granted. Although the contract of sale was executory, without an express warranty, and defendants would ordinarily be bound to examine the goods within a reasonable time after delivery and return them if defective, yet where, by a false representation of the seller, the vendee is induced to accept the goods, he may return them whenever the defects are discovered.

The proof shows that books of samples purporting to be actually cut from the goods in each case, and therefore to represent the articles delivered, were sent with the invoices before delivery. These samples represented sound merchantable cloakings. The goods delivered, were, on the contrary, unmerchantable from being over-worked. Here was a specific representation that was unquestionably false. It was such a representation as might well induce a purchaser to dispense with a laborious and minute examination, yard by yard, of 2,877 yards of cloth. The sending of the samples could have no meaning except as an assurance of the kind and quality of the goods. Defendants would have been justified in selling to their customers from such samples, and were justified in

themselves retaining the goods without a thorough examination on the faith of such a representation.

The express point was decided in *Dutchess Company* v. *Harding* (49 N. Y. 321). That was an executory sale of "1400 bags of sumac (Triangle R. sumac), quality to be like sample in every respect." The vendor caused this brand to be put upon bags containing sumac of another and inferior quality. The purchaser sampled ten or twelve bags, which were found to correspond nearly in quality with that contracted for, and the whole was thereupon accepted in reliance on the brand. The sumac was sent to the purchaser's works, and upon being tested was found to be of an inferior quality. It was held that the vendee could recover his damages, the jury having found that the acceptance of the delivery was induced in consequence of defendant having caused the article to be falsely branded : that while under such a contract there was no warranty, and the rule is that the vendee must immediately rescind and return or offer to return the goods, yet where the acceptance is induced by any fraud or artifice of the vendor the reason and foundation of the rule fails—the express or implied assent is wanting ; and that in that case the assent given was invalidated by the false brand on the bags, the vendees being misled and deceived thereby; and that there being no binding acceptance, the latter were only bound to use diligence in notifying the vendors *after the discovery* that the article was inferior.

The case before us seems to be much stronger: the furnishing of a sample purporting to be actually taken from the goods in the bale being a higher and more positive representation of quality than a brand or other exterior mark.

I think it should have been left to the jury to say whether the acceptance was in any way influenced by the receipt of these samples, and that the judgment should be reversed and a new trial ordered, the costs to abide event

BEACH, J., concurred.

Judgment reversed and new trial ordered, costs to abide event.